# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Jason List and
Alicia List,

      Plaintiffs,

and

Troy Fiedler and
Jodi Fiedler,

      Intervenor Plaintiffs,

v.

Robert Carwell, an individual, and
0820527 B C LTD, a foreign corporation
doing business as Let It Ride Carriers,

      Defendants.

Case No. 18-cv-2253 (DSD/TNL)

**ORDER**

---

Alex Steven Halbach and Michael D. Bornitz, Cutler Law Firm, LLP, 140 North Phillips Avenue, Fourth Floor, P.O. Box 1400, Sioux Falls, SD 57101-1400 (for Plaintiffs);

Kathryn Hockin and L. Michael Hall, III, Hall Law, P.A., 1010 West St. Germain Street, Suite 100, St. Cloud, MN 56301 (for Intervenor Plaintiffs); and

Brandie L. Morgenroth, Pharaoh Johan Lewis, and Stanley E. Siegel, Jr., Nilan Johnson Lewis PA, 250 Marquette Avenue South, Suite 800, Minneapolis, MN 55401 (for Defendants).

---

      This matter comes before the Court on several motions: Plaintiffs Jason and Alicia List's (collectively, "List Plaintiffs") Motion to Compel Production of Discovery, ECF No. 92; Intervenor Plaintiffs Troy and Jodi Fiedler's (collectively, "Fiedler Intervenors")

1

Motion to Compel Discovery, for Leave to Conduct Defendants' Depositions Remotely, for an Amendment of the Scheduling Order, & for Sanctions, ECF No. 108; and Defendants Robert Carwell ("Carwell") and 0820527 B C LTD ("Let It Ride") (collectively, "Defendants")'s Motion to Amend the Scheduling Order, ECF No. 101, Motion to Compel the List Plaintiffs' Discovery Responses, ECF No. 132, and Motion to Compel the Fiedler Intervenors' Discovery Responses, ECF No. 137.

A remote hearing was held. Michael D. Bornitz appeared on behalf of the List Plaintiffs; Kathryn Hockin and L. Michael Hall, III, appeared on behalf of the Fiedler Intervenors; and Brandie L. Morgenroth, Pharaoh John Lewis, and Stanley E. Siegel, Jr., appeared on behalf of Defendants.

## I. BACKGROUND

### A. The Accident

This action arises out of an automobile accident that occurred in Hennepin County, Minnesota, in 2015. Order at 2, Dec. 26, 2018, ECF No. 27 [hereinafter Dec. 26 Order]; *see also* Intrvnrs.' Compl. ¶¶ 11-18, ECF No. 55. Let It Ride is a motor carrier located in the Canadian Province of British Columbia. Dec. 26 Order at 2; *see also* Intrvnrs. Compl. ¶¶ 3, 6, 10. At the time of the accident, Let It Ride employed Carwell as a commercial truck driver. Dec. 26 Order at 2; *see also* Intrvnrs.' Compl. ¶¶ 3, 13. Carwell also lives in British Columbia. Pls.' Compl. ¶ 4, ECF No. 1; Intrvnrs.' Compl.

2

¶ 5; Decl. of Robert Carwell ¶ 2, ECF No. 149.[1]

The accident occurred when the vehicle Carwell was driving collided with a vehicle driven by Troy Fiedler. Pls.' Compl. ¶¶ 11-13; Intrvnrs.' Compl. ¶¶ 15, 17. Both Jason List and Jodi Fiedler were passengers in the vehicle driven by Troy Fiedler. Pls.' Compl. ¶ 12; Intrvnrs.' Compl. ¶ 16.

### B. Death of Let It Ride's Owner

According to Defendants, Let It Ride was solely owned and operated by Dave Chetcuti. Decl. of Stanley E. Siegel ¶ 5, ECF No. 105; *see* Decl. of Rhonda Hiscutt ¶ 6, ECF No. 123;[2] *see also* Second Decl. of Stanley E. Siegel ¶ 3, ECF No. 122.[3] In or around May 2019, Chetcuti was hospitalized in Vancouver, British Columbia, after undergoing a kidney transplant. Second Siegel Decl. ¶ 5; Hiscutt Decl. ¶ 3. Chetcuti was hospitalized until approximately early November. Second Siegel Decl. ¶ 6; *see* Hiscutt Decl. ¶ 3.

On or about November 13, 2019, a Wednesday, Defendants' counsel learned that Chetcuti had been discharged from the hospital and arranged to have a conference call with their client on November 18, the following Monday. Second Seigel Decl. ¶ 6. Chetcuti tragically passed away on November 13 when a tree fell on him at his property. Second Seigel Decl. ¶ 6; Hiscutt Decl. ¶ 4; Ex. 31 to Pls.' Aff. of Counsel, ECF No. 94-31. Based on information in the papers and provided at the hearing, Defendants' counsel

---

[1] The Carwell declaration was first filed on June 8, 2020, along with Defendants' opposition to the List Plaintiffs' and Fiedler Intervenors' motions to compel. ECF Nos. 124, 128. It was not signed or dated. Two days before the hearing, the Carwell declaration was "refiled." ECF Nos. 149, 150. This time, the Carwell declaration was signed and dated June 12, 2020. ECF Nos. 149, 150.

[2] The same declaration was also filed at ECF No. 127.

[3] The same declaration was also filed at ECF No. 126.

learned of Chetcuti's passing sometime between November 13 and 18, but no later than November 18.  *See* Second Seigel Decl. ¶ 6.  The List Plaintiffs and Fielder Intervenors were informed of Chetcuti's death in early December.  Ex. 20 to Pls.' Aff. of Counsel, ECF No. 94-20.

Among other family and friends, Chetcuti is survived by Hiscutt (his partner) and two children.  Ex. 31 to Pls.' Aff. of Counsel.  In early May 2020, counsel for the Fiedler Intervenors reached out to Chetcuti's daughter and was told that the family's intention was to dissolve Let It Ride, but that the process had not yet begun.  Aff. of Kathryn J. Hockin ¶ 2, ECF No. 112.  Chetcuti's daughter told counsel that Hiscutt "would be in charge of dealing with . . . Let It Ride."  Hockin Aff. ¶ 2.  The same day, counsel also reached out to Hiscutt and learned that "she is in possession of the Let It Ride business documents and could easily provide the requested documents."  Hockin Aff. ¶ 3.

According to Hiscutt, she was not involved with Let It Ride and the business is in the process of dissolving.  Hiscutt Aff. ¶¶ 5, 7.  Hiscutt acknowledges that she "ha[s] access to a room full of boxes and materials which belonged to [Chetcuti], but [she] ha[s] never looked through the boxes nor through any of the documents in any of the boxes in that room."  Hiscutt Aff. ¶ 8.  Hiscutt is "not familiar with [Chetcuti's] recordkeeping and . . . ha[s] no idea if there are any documents in those boxes relating to the Let It Ride business, or that are responsive to discovery requests from [the List] Plaintiffs or [Fielder] Intervenors."  Hiscutt Aff. ¶ 8.  The Court understands that Hiscutt has not personally been able to go through these boxes and appreciates that this might well be a "very burdensome and traumatic experience for [her]."  Hiscutt Aff. ¶ 10.

Fact discovery was scheduled to be completed by June 1, 2020. Fourth Am. Pretrial Sch. Order at 1, ECF No. 86. Between Chetcuti's death in November 2019 and the end of May 2020, the extent to which Defendants pursued documents related to Let It Ride and responding to discovery requests that had been served by the List Plaintiffs and Fielder Intervenors before Chetcuti's death is not entirely clear.[4] Towards the end of January 2020, counsel for the Fielder Intervenors reached out to Defendants' counsel regarding the status of certain discovery requests. Ex. 22 to Pls.' Aff. of Counsel, ECF No. 94-22. Defendants' counsel responded that they "were waiting to hear back on the discovery question as it relates to Let It Ride, and the unfortunate death of its owner/operator." Ex. 22 to Pls.' Aff. of Counsel. Based on information in the papers and provided at the hearing, it appears that Defendants' counsel relied on representations from Let It Ride's insurance adjuster, who had been in contact with Hiscutt, that the company was going to be dissolved and thereby concluded that there was no one able to respond to discovery. *See* Hockin Aff. ¶¶ 4-5. It was not until towards the end of May 2020, after the Fiedler Intervenors' counsel informed Defendants' counsel about the conversation with Hiscutt during a meet-and-confer, that Defendants' counsel reached out to Hiscutt to ascertain what she had in her possession.[5] *See* Hockin. Aff. ¶¶ 4-5.

Based on information provided at the hearing, Defendants' counsel has spoken with Hiscutt a handful of times since the end of May. It is the Court's understanding that

---

[4] The List Plaintiffs served their first set of discovery requests on Let It Ride in May 2019. *See generally* Ex. 1 to Pls.' Aff. of Counsel, ECF No. 94-1.

[5] This is despite stating to counsel for the List Plaintiffs at the beginning of April that Defendants' counsel would "attempt to make a few final contacts to get you a response . . . [to the issue of the outstanding discovery served on Let It Ride] by mid-April." Ex. 28 at 2 to Pls.' Aff. of Counsel, ECF No. 94-28.

Hiscutt has not gone through the documents and was instructed to retain them.

### C. Carwell's Heart Attack

Carwell is over 70 years old, retired, and lives in a remote area of British Columbia.   Second Seigel Decl. ¶ 11; Carwell Decl. ¶¶ 2-3.   Around the same time Chetcuti passed away, Carwell suffered a heart attack.   Carwell Decl. ¶ 5; Seigel Decl. ¶ 4.   At the hearing, the Court was informed that the heart attack took place in December 2019.   Carwell experienced complications and was subsequently hospitalized until approximately mid-May 2020.   Siegel Decl. ¶ 4; Carwell Decl. ¶ 6.

Carwell states that he is "still extremely ill and immunosuppressed," and has been advised by his doctor that he "cannot undergo any strenuous or stressful activities for [his] health until at least the fall of 2020."   Carwell Decl. ¶ 7.   "Based upon consultation with, and orders from [his] doctor, . . . [Carwell further states that he] will not have the strength, stamina, or mental acuity to prepare for and appear during a deposition under oath in this case, whether in person or by videotape, until the fall of 2020."   Carwell Decl. ¶ 7.   Other than Carwell's declaration, there is no evidence in the record of any medical restrictions.

### D. COVID-19 Pandemic

The unprecedented COVID-19 has further complicated matters.   Beginning on March 13, 2020, and continuing thereafter, the Honorable John R. Tunheim, Chief District Judge for the United States District Court for the District of Minnesota, has issued a series of General Orders in connection with the COVID-19 pandemic, *available at* https://www.mnd.uscourts.gov/coronavirus-covid-19-guidance.   These General Orders

acknowledge, among other things, that (1) a national emergency was declared by the President of the United States of America in response to COVID-19; (2) a peacetime emergency was declared by the Governor of the State of Minnesota in response to COVID-19; (3) a stay-at-home order was implemented by the Governor of the State of Minnesota in response to COVID-19; and (4) executive orders continued to be issued by the Governor of the State of Minnesota in response to COVID-19 that place restrictions on Minnesota residents.

As particularly relevant in this case, the Centers for Disease Control and Prevention ("CDC") has cautioned that "[t]ravel increases [the] chance of getting and spreading COVID-19," and emphasized that "[s]taying home is the best way to protect yourself and others from COVID-19."  *Travel During the COVID-19 Pandemic*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/travelers/ travel-during-covid19.html (last accessed Oct. 8, 2020).  On March 21, 2020, the United States and Canada "temporarily restricted non-essential travel across the US-Canada land borders" and these restrictions remain in effect until October 21, 2020.  *Temporary Restriction of Travelers Crossing US-Canada & Mexico Land Borders for Non-Essential Purposes*, U.S. Customs & Border Protection, https://help.cbp.gov/s/article/Article- 1596?language=en_US (last accessed Oct. 8, 2020).  Further, as of August 6, 2020, the United States Department of State advises that travel to Canada should be "reconsider[ed]" and notes that the CDC "has issued a Level 3 Travel Health Notice for Canada due to COVID-19."  *Canada International Travel Information*, U.S. Dep't of State,    https://travel.state.gov/content/travel/en/international-travel/International-Travel-

Country-Information-Pages/Canada.html#/ (last accessed Oct. 8, 2020); *see also COVID-19 in Canada*, *Travelers' Health*, Ctrs. for Disease Control & Prevention, https://wwwnc.cdc.gov/travel/notices/warning/coronavirus-canada (last accessed Oct. 8, 2020) ("Warning – Level 3, COVID-19 risk in Canada is high").

## II. ANALYSIS

The instant motions all implicate the Court's broad discretion in handling pretrial procedure and discovery. *See, e.g.*, *Hill v. Sw. Energy Co.*, 858 F.3d 481, 484 (8th Cir. 2017) ("'A district court has very wide discretion in handling pretrial discovery . . . .'") (quoting *United States ex rel. Kraxberger v. Kansas City Power & Light Co.*, 756 F.3d 1075, 1082 (8th Cir. 2014)); *Solutran, Inc. v. U.S. Bancorp*, No. 13-cv-2637 (SRN/BRT), 2016 WL 7377099, at *2 (D. Minn. Dec. 20, 2016) ("Further, magistrate judges 'are afforded wide discretion in handling discovery matters and are free to use and control pretrial procedure in furtherance of the orderly administration of justice.'") (internal quotation marks omitted) (quoting *Favors v. Hoover*, No. 13-cv-428 (JRT/LIB), 2013 WL 6511851, at *3 n.3 (D. Minn. Dec. 12, 2013)).

### A.  List Plaintiffs' & Fielder Intervenors' Motions to Compel

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). "'The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes.'" *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 742 (8th Cir. 2018) (quoting Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment). "[A] court can—and

must—limit proposed discovery that it determines is not proportional to the needs of the case." *Id.* (quotation omitted). Considerations bearing on proportionality include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see also Vallejo*, 903 F.3d 742-43.

### 1. Carwell's Discovery Responses

The Court begins with the List Plaintiffs' challenges to a number of Carwell's discovery responses.

### a. Notarized Signature for Interrogatory Answers

Rule 33 requires that "[e]ach interrogatory . . . , to the extent it is not objected to, be answered separately and fully in writing and under oath." Fed. R. Civ. P. 33(b)(3). Carwell's answers to the List Plaintiffs' interrogatories contain a signed "verification" section in which Carwell "declares, under penalty of perjury, that he has read the above and foregoing Interrogatories and know [sic] the content thereof, and that the matters and things set forth therein are true and correct to the best of his knowledge, information and belief." Ex. 7 to Pls.' Aff. of Counsel at 11, ECF No. 94-7; *accord* Ex. 8 to Pls.' Aff. of Counsel at 5, ECF No. 94-8. The List Plaintiffs contend Carwell is required "to provide original *notarized* signatures." Pls.' Mem. in Supp. of Mot. to Compel at 14, ECF No. 93. At the hearing, the parties agreed to stipulate that this "verification" would have the same effect as if it had been executed before a notary. To the extent such stipulation has

9

not yet been executed, the parties shall execute said stipulation by November 15, 2020.[6]

### b. Agreements to Supplement: Criminal History, Cell Phone Records, Medical Records, and Interrogatory 7

The List Plaintiffs move to compel Carwell to respond or supplement his responses to discovery requests concerning his criminal history (Interrogatory 3),[7] cell phone records (Request For Production 15),[8] and medical records (Request for Production 26). Defendants have agreed to address these responses. At the hearing, the parties informed the Court that they were in the process of obtaining the relevant information and authorizations. To the extent such authorizations have not been

---

[6] To the extent this issue might arise in the future with respect to other discovery responses in this case, the parties are reminded of 28 U.S.C. § 1746, which governs unsworn declarations under penalty of perjury and provides as follows:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

> (1) If executed without [sic] the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature)."

> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)."

[7] Any concern by the List Plaintiffs regarding the notarization of Carwell's response is addressed by the agreed-upon stipulation. *See supra* Section II.A.1.a.

[8] The List Plaintiffs contend that they "are also entitled to know who . . . Carwell called following the collision." Pls.' Mem. in Supp. of Mot. to Compel at 18. To the extent the List Plaintiffs seek to compel further information regarding the identity of the persons Carwell called in connection with Request for Production 15, rather than just the production of the cell phone records, their motion is denied. Request for Production 15 merely asks for Carwell's cell phone records. Ex. 3 to Pls.' Aff. of Counsel at 8 ("Produce your wireless telephone records for March 6, 2015 to September 6, 2015."), ECF No. 94-3.

completed already, Carwell shall complete them by November 1, 2020. Consistent with the spirit of this agreement, Carwell shall fully cooperate with any reasonable request for further information in connection with these authorizations so that the documents sought by the authorizations can be obtained.

The List Plaintiffs have also moved to compel Carwell to supplement his response to Interrogatory 7, requesting that he "identify any third party . . . alleged [to have] caused or contributed to the cause of the collision and state the facts upon which . . . this contention" is based. Pls.' Mem. in Supp. of Mot. to Compel at 26. Carwell has also agreed to supplement this response. To the extent he has not already done so, Carwell shall supplement his response to Interrogatory 7 by November 15, 2020.

### c. Insurance-Related Discovery

The next group of requests concern statements Carwell made regarding the accident (Request for Production 21); correspondence Carwell had with any person other than counsel regarding the accident (Request for Production 23); Defendants' claims file (Request for Production 25); and the insurance policy. Collectively, these requests are largely designed to get at information Carwell may have shared with Defendants' insurance company, Insurance Corporation of British Columbia ("ICBC"). Defendants respond that all information regarding the ICBC insurance policy has been produced and Carwell does not have any statements or correspondence to produce. Defendants additionally respond that Carwell does not have the claims file, which belongs to ICBC. At bottom, this dispute is really over information the List Plaintiffs contend should be obtainable from ICBC.

Back in 2016, approximately six months after the accident, the List Plaintiffs sent a letter to ICBC, requesting preservation of various things in connection with the accident.  *See generally* Ex. 9 to Pls.' Aff. of Counsel, ECF No. 94-9.  The List Plaintiffs argue that "ICBC is in the business of insurance, and that includes claims investigations," and "ICBC, like all insurers, routinely obtains statements from their insureds in the regular course of business."  Pls.' Mem. in Supp. of Mot. to Compel at 18.  The List Plaintiffs further argue that "Carwell should be able to get some of the requested documentation from [ICBC]."  Pls.' Mem. in Supp. of Mot. to Compel at 22.  According to the List Plaintiffs, they "should be allowed to determine what . . . Carwell and Let It Ride reported to ICBC regarding the cause of the collision and what happened at the scene."  Pls.' Mem. in Supp. of Mot. to Compel at 23.

A party cannot be compelled to produce what it does not have.  *See, e.g.*, *Edeh v. Equifax Info. Servs., LLC*, 291 F.R.D. 330, 337 (D. Minn. 2013) ("Here, Equifax maintains that it does not have the documents requested in Requests for Production Nos. 3 and 4.  If Equifax does not have the documents in its possession, custody, or control, it cannot be compelled to produce them."); *see also Bombardier Recreational Prods., Inc., v. Arctic Cat, Inc.*, No. 12-cv-2706 (MJD/LIB), 2014 WL 5685463, at *7 (D. Minn. Sept. 24, 2014) ("The Court must accept, at face value, a party's representation that it has fully produced all materials that are discoverable.") (quotation omitted); *Farmers Ins. Exch. v. West*, No. 11-cv-2297 (PAM/JJK), 2012 WL 12894845, at *5 (D. Minn. Sept. 21, 2012) ("Of course, the Court cannot order any party to produce something in discovery that does not, in fact, exist.").  Carwell does not have information responsive to the List

12

Plaintiffs' requests, so there is nothing to compel from him.  Nor is ICBC a party to this case.  Whatever ICBC-claims-related discovery the List Plaintiffs may have hoped to get indirectly from Defendants should have been sought directly from ICBC by subpoena or other similar process—something the List Plaintiffs had ample opportunity to do during discovery.[9]

Therefore, with respect to these requests, the Court will grant the List Plaintiffs' motion only to the extent that Carwell formally supplement his response to Request for Production 21 by November 15, 2020, if he has not done so already.  *See* Second Seigel Decl. ¶ 7 (Defendants confirmed on telephone call that "Carwell did not have any correspondence or recorded or written statements in his possession to produce").  The List Plaintiffs' motion is otherwise denied as to these requests.

### d.  Counting of Interrogatories

Initially, Carwell objected to the number of interrogatories served by the List Plaintiffs, asserting they exceeded the number of interrogatories permitted by the pretrial scheduling order.  Ex. 3 to Pls.' Aff. of Counsel at 2, 4-5, ECF No. 94-3; *see, e.g.*, Fourth Am. Pretrial Sch. Order at 1 ("No more than 30 Interrogatories, counted in accordance with Fed. R. Civ. P. 33(a), shall be served by any party.").  Nevertheless, Carwell subsequently responded to all of the interrogatories served by the List Plaintiffs.  When asked by the Court at the hearing if this issue was moot, the List Plaintiffs expressed

---

[9] As stated above, the List Plaintiffs maintain that "Carwell should be able to get some of the requested documentation from [ICBC]."  Pls.' Mem. in Supp. of Mot. to Compel at 22.  Other than this conclusory assertion, the List Plaintiffs have not articulated how these documents should be deemed within Carwell's possession, custody, or control.  *See* Fed. R. Civ. P. 34(a)(1).  The List Plaintiffs are represented by counsel and the Court will not make arguments for them.

concern over potential future discovery should the Court extend the time for fact discovery in this matter.

The issue of whether Carwell should be compelled to respond to certain interrogatories served by the List Plaintiffs in this matter is presently moot; he has already done so. Therefore, this portion of the List Plaintiffs' motion is denied as moot.

As set forth in greater detail below, *see infra* Section II.C, the Court is not inclined to allow additional written discovery beyond that which was served on or before May 1, 2020. The Fourth Amended Pretrial Scheduling Order provides that "[f]act discovery shall be *commenced in a time to be completed* on or before *June 1, 2020*." Fourth Am. Pretrial Sch. Ord. at 1. The List Plaintiffs have had well over a year to conduct discovery. While the Court's ruling should not be interpreted to prohibit or preclude reasonable requests for clarification of a response ordered herein, whether any such follow-up request exceeds the bounds of clarification will be a context-specific inquiry that is simply premature at this time. The Court strongly encourages the parties to focus their efforts on the substantive issues at hand.

### 2. Carwell's Deposition

The List Plaintiffs and Fielder Intervenors have both moved to compel Carwell's deposition to occur remotely.

Defendants maintain they have agreed to conduct Carwell's deposition remotely. *See, e.g.*, Defs.' Opp'n to Pls.' Mot. to Compel at 8 ("Plaintiffs failed to disclose Defendant Carwell's voluntary agreement to . . . participate in a remote deposition during the meet and confer discussions before this Motion was filed."), ECF No. 121; Defs.'

Opp'n to Intrvnrs.' Mot. to Compel at 9 ("During the parties['] meet[-]and[-]confer call on May 21, 2020, Defendants' counsel agreed to allow the deposition of Defendant Carwell to move forward remotely."), ECF No. 125.   Defendants have, however, conditioned their agreement: "Carwell could be deposed, once his health allowed, by the parties remotely if his counsel was physically present."   Second Seigel Decl. ¶ 7; *see, e.g.*, Second Seigel Decl. ¶ 10 ("Defendants' counsel agreed to allow the deposition of Defendant Carwell to go forward remotely if Defendants' counsel was able to be present with Defendant Carwell to defend the deposition."); Defs.' Opp'n to Pls.' Mot. to Compel at 8 (stating Defendants already agreed to "[a]llow for Defendant Carwell's deposition to be taken remotely if his defense counsel could be present with him at the time of the deposition."); *see also* Defs.' Opp'n to Intrvnrs.' Mot. to Compel at 9 ("Defendants' counsel requested, however, that because Defendant Carwell is in Canada and unfamiliar with the legal process in the United States, that counsel be present with him for his deposition.").   Defendants argue that conducting Carwell's deposition remotely "would still require someone to be present in his home to equip him with and train him on a computer and deposition software."   Defs.' Opp'n to Intrvnrs' Mot. to Compel at 2; *see also* Seigel Decl. ¶ 10.   Defendants also assert that "Carwell's doctor has advised against the strenuous activity associated with deposition preparation as well as having anyone present in . . . Carwell's home."   Defs.' Opp'n to Intrvnrs' Mot. to Compel at 3.   According to Defendants, Carwell will "not be able to attend a deposition until the fall of 2020."   Seigel Decl. ¶ 10.

Rule 30(b)(4) of the Federal Rules of Civil Procedure provides that the Court may

order "a deposition to be taken by telephone or remote means." *See, e.g.*, *Learning Res., Inc. v. Playgo Toys Enters. Ltd.*, No. 19-cv-00660, ___ F.R.D. ____, 2020 WL 3250723, at *1 (N.D. Ill. June 16, 2020) (discretion to order deposition be taken by remote means under Rule 30(b)(4)); *accord Sonrai Sys., LLC v. Romano*, No. 16 CV 3371, 2020 WL 3960441, at *1 (N.D. Ill. July 13, 2020). This Rule, like all of the other Rules, must be "construed, administered, and employed . . . to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1; *see Swenson v. GEICO Cas. Co.*, No. 2:19-cv-01639-JCM-NJK, ___ F.R.D. ____, 2020 WL 4815035, at *3 (D. Nev. Aug. 19, 2020) ("As with the Federal Rules of Civil Procedure more generally, courts are mindful to construe Rule 30(b)(4) in a manner that secures the just, speedy, and inexpensive determination of the case.").

"Generally, leave to take depositions by remote means should be granted liberally." *Swenson*, 2020 WL 4815035, at *2; *see also In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637, 2020 WL 3469166, at *7 (N.D. Ill. June 25, 2020) [hereinafter *In re Broiler Chicken*] ("Courts have long held that leave to take remote depositions pursuant to Rule 30(b)(4) should be granted liberally.") (citing cases).

> Analyzing whether to permit remote depositions generally consists of two steps. First, the proponent must advance a legitimate reason for seeking a remote deposition. Second, if that foundational showing is made, then the burden shifts to the opposing party to make a particularized showing that conducting the deposition by remote means would be prejudicial.

*Swenson*, 2020 WL 4815035, at *2 (quotation and citation omitted); *accord In re Broiler Chicken*, 2020 WL 3469166, at *7. This requires careful consideration of the facts and

16

circumstances, including the hardships asserted.  *See, e.g.*, *Learning Res., Inc.*, 2020 WL
3250723, at *1 ("[T]his Court must balance claims of prejudice and those of hardship and
conduct a careful weighing of the relevant facts.") (quotation omitted); *accord Rouviere
v. DePuy Orthopaedics, Inc.*, No. 1:18-cv-04814 (LJL) (SDA), 2020 WL 3967665, at *2
(S.D. N.Y. July 11, 2020); *see also In re Broiler Chicken*, 2020 WL 3469166, at *7.

"COVID-19 'is a potentially fatal illness with the ability to spread through
asymptomatic or pre-symptomatic carriers, with no approved cure, treatment, or
vaccine.'"  *Grupo Petrotemex, S.A. de C.V. v. Polymetrix AG*, No. 16-cv-2401
(SRN/HB), 2020 WL 4218804, at *2 (D. Minn. July 23, 2020) [hereinafter *Grupo*]
(quoting *Rouviere*, 2020 WL 3967665, at *3) (internal quotation omitted).  "[T]he [CDC]
ha[s] noted that the best way to prevent illness is to minimize person-to-person contact,"
*Learning Res., Inc.*, 2020 WL 3250723, at *2 (quotation omitted); *see How to Protect
Yourself, Coronavirus Disease 2019 (COVID-19)*, Ctrs. for Disease Control &
Prevention, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention
.html (last accessed Oct. 8, 2020).  As this and other federal courts have recognized, "the
President of the United States has declared a national emergency due to the spread of the
COVID-19 virus."  *Learning Res., Inc.*, 2020 WL 3250723, at *2 (quotation omitted); *see
generally* Gen. Order Nos. 18, 19.   General Order No. 18 "continues to strongly
encourage the use of videoconferencing for civil hearings, bench trials, and other
proceedings."[10]  Gen. Order No. 18 at 3.

---

[10] Even criminal proceedings that were once handled in person are now being conducted remotely with the
defendant's consent.  *See generally* Gen. Order Nos. 18, 19.

Carwell is at increased risk for severe illness from COVID-19 based on his age and his underlying medical conditions. *See, e.g.*, *Older Adults*, *Coronavirus Disease 2019 (COVID-19)*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last accessed Oct. 8, 2020); *People with Certain Medical Conditions*, *Coronavirus Disease 2019 (COVID-19)*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last accessed Oct. 8, 2020) (individuals with heart conditions and those in an immunocompromised state at increased risk for severe illness); *see also How to Protect Yourself*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html ("Older adults and people who have certain underlying conditions like heart or lung disease or diabetes are at an increased risk of severe illness from COVID-19 illness."). Further, as noted above, various restrictions are in place for travel between the United States and Canada. Indeed, regardless of the current level of outbreak in either location, the very nature of long-distance travel is a contact-intensive activity: "[T]ravelers must find transportation to and from airports[;] interact with security personnel, airline personnel, and other travelers[;] sit in relatively close proximity to other travelers on airplanes[;] and stay in hotels." *Grupo*, 2020 WL 4218804, at *2.

"Due to the COVID-19 pandemic, conducting depositions remotely has become the 'new normal.'" *Id.* at *2 (citing *In re Broiler Chicken*, 2020 WL 3469166, at *5).

"Courts are beginning to recognize that a 'new normal' has taken hold throughout the country in the wake of the COVID-19 pandemic that may necessitate the taking of remote depositions unless litigation is going to come to an indefinite halt until there is a cure or a vaccine for COVID-19."  *In re Broiler Chicken*, 2020 WL 3469166, at *5 (footnote citing cases omitted); *see also Swenson*, 2020 WL 4815035, at *3 ("[C]ourts within the Ninth Circuit routinely highlight remote depositions as an effective and appropriate means to keep cases moving forward notwithstanding pandemic-related restrictions.") (citing cases).

The indefinite delay Defendants seek so that counsel may travel to Canada to conduct deposition activities with Carwell is entirely unworkable.  "[O]ne court labeled the 'hope that physical distancing and stay-at-home orders required by the current pandemic will be lessened to allow for in-person depositions in the near future' as 'pure speculation.'"  *In re Broiler Chicken*, 2020 WL 3469166, at *8 (quoting *United States ex rel. Chen v. K.O.O. Constr., Inc.*, 445 F. Supp. 3d 1055, 1056 (S.D. Cal. 2020)). Defendants have cited no authority that their ability to travel to Canada may be better anytime soon, and this Court is likewise "unable to predict the creation and distribution of an effective vaccine or the ebbs and flows of the spread of the virus."  *Swenson*, 2020 WL 4815035, at *6.  "Unfortunately, it could well be that pandemic-related restrictions exist for many months to come . . . ."  *Id.*; *see Rouviere*, 2020 WL 3967665, at *4 ("There is no basis to believe that the conditions that require a remote deposition to be taken will not continue for the foreseeable future, and the Court declines to indefinitely delay the completion of discovery in this case."); *Chen*, 445 F. Supp. 3d at 1056 ("It is not feasible

for the Court to extend deposition deadlines until a time when they can be safely conducted in person because no one knows when that will occur and there are alternatives."). Proceeding with Carwell's remote deposition now "move[s] th[is] case closer to resolution by dispositive motion, settlement, or trial than would be the case if the litigation treads water until the pandemic abates." *In re Broiler Chicken*, 2020 WL 3469166, at *9 (footnote omitted).

The Court appreciates Carwell's legitimate concerns for his own health as he recovers from his heart attack and the complications he experienced. At the same time, while the Court has no reason to doubt the representations of Carwell and Defendants' counsel, there is no medical evidence in the record supporting the degree of restriction Carwell is purportedly under. In any event, it has now been approximately ten months since Carwell's heart attack and five months since he was released from the hospital. Defendants have represented that Carwell would be in a position to be deposed in "the fall." Carwell Decl. ¶ 7; Defs.' Opp'n to Intrvnrs.' Mot. to Compel at 2.

The Court is also mindful of Defendants' logistical concerns based on Carwell's location and the fact that he does not possess certain technical equipment that might otherwise more easily facilitate the taking of his deposition remotely. Courts have rejected these and similar types of challenges as reasons not to conduct depositions remotely. *See, e.g.*, *Swenson*, 2020 WL 4815035, at *4-5; *In re Broiler Chicken*, 2020 WL 3469166, at *2-5; *Grano v. Sodexo Mgmt., Inc.*, 335 F.R.D. 411, 415 & n.4 (S.D. Cal. 2020). What may come across as harsh is nevertheless true: "Attorneys and litigants all over the country are adapting to a new way of practicing law, including conducting

20

depositions and deposition preparation remotely." *Grano*, 335 F.R.D. at 415; *accord Chen*, 445 F. Supp. 3d at 1057. "There are numerous resources and training opportunities available throughout the legal community to assist [the parties'] counsel in the operation and utilization of the new technology." *Grano*, 335 F.R.D. at 415; *see also, e.g.*, *Swenson*, 2020 WL 4815035, at \*5 ("In short, ample resources exist for counsel to prepare themselves to proceed by video to facilitate the smooth operation of a remote deposition."); *Grupo*, 2020 WL 4218804, at \*3 ("In addition, there are many resources available from vendors and throughout the legal community to assist counsel in preparing for remote depositions.").

Nor is there evidence in the record to suggest that Carwell "cannot learn how to use the technology required for a video deposition or preparation session" with the help of counsel and other resources. *In re Broiler Chicken*, 2020 WL 3469166, at \*3. That Carwell, or counsel for that matter, may "not presently [be] comfortable or familiar with the technology does not mean they cannot learn the basics that would allow them to be prepared or deposed remotely even if they never become fully comfortable with the technology themselves." *Id.*

The Court will grant the List Plaintiffs and Fielder Intervenors' request to take Carwell's deposition remotely.[11] No sooner than December 1 but no later than December 15, 2020, Carwell shall sit for a deposition by video conference. This timeframe balances

---

[11] "The Court's holding in this case is not tantamount to a finding that concerns raised regarding COVID-19 will *always* suffice to support the entry of an order requiring a remote videoconference deposition." *Learning Res., Inc.*, 2020 WL 3250723, at \*3 n.2; *see also In re Broiler Chicken*, 2020 WL 3469166, at \*8 ("To be clear, this is not a blanket ruling that the COVID-19 pandemic alone justifies the taking of remote depositions in all cases and under all circumstances.").

21

a number of competing concerns. First, it is consistent with Carwell's medical restrictions. Second, it provides time for Carwell to supplement his discovery responses to the extent he has not done so already. Third, it gives Defendants' counsel reasonable time to prepare Carwell. Lastly, it advances this litigation forward in the face of the pandemic's uncertain duration. *See, e.g.*, *Grupo*, 2020 WL 4218804, at *3 ("On balance, the Court finds that the potential risk of danger and hardship to witnesses, counsel, court reporters and videographers will be considerable lessened through remote video depositions, and outweighs the potential prejudice to Plaintiffs."); *In re Broiler Chicken*, 2020 WL 3469166, at *8 ("In this case, however, the COVID-19 pandemic, in conjunction with the other circumstances discussed above, are legitimate reasons for the Class Plaintiffs to want to move forward with remote depositions now.").

The Court is confident that the parties can work together to come up with procedures, protocols, conventions, and the like "that can make the taking and defending of remote depositions more palatable." *In re Broiler Chicken*, 2020 WL 3469166, at *4 n.3. Counsel for the Fielder Intervenors "have conducted numerous depositions via remote technology, and have prepared their own clients for depositions via remote technology." Intrvnrs.' Mem. in Supp. of Mot. to Compel at 17, ECF No. 111. Their experience may yield suggestions on how this process might be more easily facilitated. The Court also encourages the parties to look at the rather extensive protocol outlined in *In re Broiler Chicken* for ideas. 2020 WL 3469166, at *4 n.3, 11-12.

### 3. Let It Ride's Discovery Responses

Let It Ride has not responded to discovery served by either the List Plaintiffs or

22

the Fielder Intervenors.  *See, e.g.*, Pls.' Mem. in Supp. of Mot. to Compel at 4, 10; Intrvnrs.' Mem. in Supp. of Mot. to Compel at 3, 8.  With respect to the List Plaintiffs, at issue are those interrogatories and requests for production of documents the List Plaintiffs served on Let It Ride in May 2019.[12]  *See* Pls.' Mem. in Supp. of Mot. to Compel at 14. With respect to the Fielder Intervenors, at issue are the requests for production of documents the Fielder Intervenors served in November 2019 and ten[13] interrogatories also served in November 2019.  *See* Intrvnrs.' Mem. in Supp. of Mot. to Compel at 4-7, 10-14.  Defendants' position is that there is no one to respond to discovery because "Let It Ride is in the process of dissolving, and its owner, operator, and sole employee, . . . was killed last fall."  Defs.' Resp. to Pls.' Mot. to Compel at 12, ECF No. 121; *accord id.* at 13-14; *see also* Defs.' Resp. to Intrvnrs.' Mot. to Compel at 1, 7-9.

Defendants have provided no authority to support the position that Let It Ride does not have an obligation to respond to discovery simply because it may no longer be actively conducting business or is contemplating dissolution.  Let It Ride is a party to this action; it has answered and contests liability.  *See Burris v. Versa Prods., Inc.*, No. 07-cv-3938 (JRT/JJK), 2013 WL 608742, at *6 (D. Minn. Feb. 19, 2013).  While Hiscutt may have communicated her intent to dissolve Let It Ride to its insurer and possibly

---

[12] To the extent the List Plaintiffs seek an order compelling the production of "future discovery requests," Pls.' Mem. in Supp. of Mot. to Compel at 14, any such requests are not before the Court.  The Court will not grant the List Plaintiffs a blank check as to any and all future discovery.

[13] While additional interrogatories were served, the Fielder Intervenors confirmed at the hearing that they are seeking to compel just the following ten interrogatories: 1, 20, 27, 28, 31, 35, 37, 39, 41, and 47.  *See* Intrvnrs.' Mem. in Supp. of Mot. to Compel at 10-14.

Defendants' counsel as well, the law of British Columbia[14] provides that "a legal proceeding commenced by or *against the company before its dissolution may be continued as if the company had not been dissolved*." Business Corporations Act, S.B.C. 2002, c. 57, s. 346(1)(a) (emphasis added); *see, e.g.*, *Ziemer v. Wheeler*, 2014 BCSC 2049, para. 201 (Can. B.C. S.C.) ("Section 346(1)(a) provides that if proceedings are brought against the company, then they continue as if the company had not been dissolved.").

At the hearing, Defendants did not dispute this continued legal existence even if Let It Ride should dissolve. "If a dissolved [British Columbian company] may still be a party in a civil lawsuit, . . . then it has a duty under the Federal Rules of Civil Procedure to respond to discovery that is properly served on it." *Burris*, 2013 WL 608742, at *6. As a party to this litigation, Let It Ride must respond to discovery. *Id.* "What [Let It Ride] cannot do, free of consequences, is tell [the List Plaintiffs and Fielder Intervenors] that they are just out of luck." *Id.* at *7.

The Court recognizes that a series of unfortunate circumstances have culminated in an unclear chain of succession for Let It Ride, but it is not this Court's responsibility to resolve the "who" or the "how" for Let It Ride. There are individuals to whom Defendants' counsel may turn for information. ICBC, Let It Ride's insurance company, has been on notice of the accident since at least March 2016, when the List Plaintiffs sent a preservation letter to the company. ICBC continues to communicate with Defendants'

---

[14] "Rule 17(b) defines when a party has the capacity to sue or be sued in federal court." *Lundquist v. Univ. of S.D. Sanford Sch. of Med.*, 705 F.3d 378, 379 (8th Cir. 2013); *see generally* Fed. R. Civ. P. 17(b). For corporations like Let It Ride, Rule 17(b)(2) states that the capacity to sue or be sued is determined "by the law under which [the corporation] was organized."

counsel and may be the most incentivized through its own potential exposure.  *See* Ex. 9 to Pls.' Aff, of Counsel.  Carwell and other former employees may have information responsive to the List Plaintiffs and Fiedler Intervenors' discovery requests.  *See Burris*, 2013 WL 608742, at *6.

In addition, the several boxes of documents in Canada with Hiscutt may very well be responsive to and assist in answering the discovery propounded.  Under Rule 34, a responding party must produce those documents in its "possession, custody, or control." Fed. R. Civ. P. 34(a)(1).  This concept of "possession, custody, or control" is not confined to physical possession, but also looks to "whether the party has a legal right to the documents or practical ability to obtain the information."  *Triple Five of Minn., Inc. v. Simon*, 212 F.R.D 523, 527 (D. Minn. 2002) (citing *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 636 (D. Minn. 2000)).  There is no real dispute that Let It Ride has the ability to obtain these documents from Hiscutt, who has physical possession of them. While Hiscutt has expressed varying degrees of willingness to go through the documents herself given the understandable emotional strain of such a task, it cannot be said that documents are not within Let It Ride's possession, custody, or control.

Absent the current public health situation, Defendants' counsel intended to travel to Canada to examine the documents.  The COVID-19 pandemic has, however, severely curtailed the availability of this option and the timeframe in which this option might once again become reasonably available is entirely speculative.  Similarly, the Court does not doubt or discount the significant personal burden to Hiscutt of having to go through these documents herself in the wake of Chetcuti's tragic and unexpected passing.

There is, however, another solution that well accounts for and balances the principles of Rules 1 and 26.  Under Rule 1, the Federal Rules of Civil Procedure are to be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."  Rule 26 mandates proportionality in discovery.  *See* Fed. R. Civ. P. 26(b)(1).  As stated above, considerations bearing on proportionality include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see also Vallejo*, 903 F.3d 742-43.

At the hearing, counsel for the Fielder Intervenors offered to pay for these documents to be shipped from Canada to Defendants' counsel.  Counsel for the List Plaintiffs also offered to assist in the cost of shipping the documents.  Given the current state of Let It Ride and the unique circumstances of this case, reviewing those documents is likely one of the few remaining ways to obtain information relevant to the issues at stake in this litigation.  The Fielder Intervenors and List Plaintiffs have agreed to shoulder the expense of having the documents shipped to Defendants.  Having the documents shipped to Defendants' counsel greatly lessens the personal burden to Hiscutt. Moreover, as a practical matter, whether the documents bear on this litigation and their significance, if any, will very likely be more readily apparent to Defendants' counsel than Hiscutt, thereby increasing the efficiency of going through the documents.  Lastly, shipping the documents to Defendants' counsel now—rather than awaiting an

26

undetermined period of time for the pandemic to subside—fosters a timelier resolution of this action.

Finally, Let It Ride's wholesale failure to respond to discovery is not attributable to an arguably excusable few days' delay or inadvertent calendaring error. The List Plaintiffs and Fielder Intervenors regularly followed up with defense counsel regarding the status of Let It Ride's discovery responses. *See, e.g.*, Pls.' Mem. in Supp. of Mot. to Compel at 5-10 (since at least July 3, 2019); Intrvnrs.' Mem. in Supp. of Mot. to Compel at 3 (since at least January 13, 2020). Nor was it, at bottom, a reasonable response in the wake of an unexpected series of events or the product of an unprecedented pandemic. While their efforts and abilities may have been hindered in part as of mid-March, this does not account for Defendants having largely sat on their hands in the months following Chetcuti's death, assuming Let It Ride would just fade away.

The time for these discovery responses is long overdue. Let It Ride's inaction has rendered any objections it might have had to these discovery requests untimely. *See* Fed. R. Civ. P. 33(b)(2), (4) (answers to interrogatories and any objections due within 30 days; untimely objections waived); Fed. R. Civ. P. 34(b)(2)(A)-(C) (responses to requests for production and any objections due within 30 days); *Cargill, Inc. v. Ron Burge Trucking, Inc.*, 284 F.R.D. 421, 424 (D. Minn. 2012) ("Although Rule 34 does not contain an automatic waiver provision for untimely objections as does Rule 33(b)(4), courts have reasoned that Rule 33(b)(4) type waiver should be implied into all rules involving the use of the various discovery mechanisms.") (quotation omitted). "For the waiver provision in Rule 33, and, by implication, Rule 34, to mean anything, a party cannot unilaterally

27

determine that it is entitled to a stay of discovery and maintain its objections to discovery requests that it never responded to." *Cargill*, 284 F.R.D. at 427.

Therefore, with respect to the outstanding discovery responses, the Court will grant the List Plaintiffs and Fielder Intervenors' motions to compel as follows: By November 15, 2020, the parties shall arrange to have the boxes of documents with Hiscutt shipped from Canada to Defendants' counsel.[15] By January 15, 2021, Defendants shall respond, without objection, to (a) the List Plaintiffs' Interrogatories and Requests for Production of Documents to Defendant 0820527 B C LTD d/b/a Let It Ride Carriers (First Set), dated May 8, 2019; (b) the Fielder Intervenors' Request for Production of Documents to Defendant 0820527 B C LTD d/b/a Let It Ride Carriers, dated November 5, 2019; and (c) Interrogatories 1, 20, 27, 28, 31, 35, 37, 39, 41, and 47 of the Fielder Intervenors' Interrogatories to Defendant Let It Ride Carriers, dated November 5, 2019. Defendants shall arrange and pay for the boxes of documents to be shipped back to Hiscutt no later than 60 days after the termination of this action, including any appeals.

The List Plaintiffs and Fielder Intervenors' motions to compel are otherwise denied with respect to the outstanding discovery responses.

Should Let It Ride

> persist[] in its position that it will not provide substantive answers to interrogatories or document requests, . . . consequences may include preventing [it] from contesting issues addressed in the discovery or defending itself using documents or other pieces of information that have not been produced. *See* Fed. R. Civ. P. 37(d)(1)(A)(ii) (providing for

---

[15] While awaiting the arrival of these documents, Defendants would do well to explore additional avenues of information so as to be in a position to complete Let It Ride's responses within the timeframe set forth herein.

sanctions for failure to answer interrogatories or requests for inspection); Fed. R. Civ. P. 37(d)(3) (providing that the Court may impose sanctions under Rule 37(b)(2)(A)(i)-(vi)).  It may also be subject to other more dispositive sanctions, including the entry of judgment against it. Fed. R. Civ. P. 37(b)(2)(A)(v)-(vi).

*Burris*, 2013 WL 608742, at *7.

### 4.  Let It Ride's 30(b)(6) Deposition

The List Plaintiffs also seek to compel Let It Ride to sit for a 30(b)(6) deposition.[16]   Again, Defendants respond that there is no one left to designate. Defendants' position is plainly without legal support.

"The testimony elicited at the Rule 30(b)(6) deposition represents the knowledge of the corporation, not of the individual deponents."  *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D. N.C. 1996); *accord Great Am. Ins. Co. of N.Y. v. Vegas Constr. Co., Inc.*, 251 F.R.D. 534, 538 (D. Nev. 2008).   When a party notices the deposition of a corporation like Let It Ride, the corporation "*must* then designate one or more officers, directors, or managing agents, or designate *other persons who consent to testify on its behalf*." Fed. R. Civ. P. 30(b)(6) (emphasis added).  "The persons designated must testify about information known or reasonably available to the organization."  *Id.*

"A Rule 30(b)(6) designee is not required to have personal knowledge on the designated subject matter."  *Great Am. Ins. Co.*, 251 F.R.D. at 538.  "If the persons designated by the corporation do not possess personal knowledge of the matters set out in

---

[16] Although the Fielder Intervenors have not expressly moved to compel a 30(b)(6) deposition of Let It Ride, they have moved to extend the deadline for fact discovery to take Defendants' depositions.  *See, e.g.*, Intrvnrs.' Mem. in Supp. of Mot. to Compel at 19 (noting Defendants "have been unable to answer written discovery, or produce . . . Carwell or a 30(b)(6) deponent for Let It Ride within the current discovery deadline and requesting an extension of time "to allow factual discovery to be completed from Defendants").

the deposition notice, the corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers for the corporation." *Taylor*, 166 F.R.D. at 361. "Thus, the duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved." *Id.*; *accord Great Am. Ins. Co.*, 251 F.R.D. at 539; *see also, e.g.*, *Klein v. Affiliated Grp., Inc.*, No. 18-cv-949 (DWF/ECW), 2019 WL 246768, at *9 (D. Minn. Jan. 17, 2019). As "[t]his obligation requires the designee to testify about information known or reasonably available to the organization[, it] . . . can include information held by third-party sources if that information is reasonably available to the organization." *Klein*, 2019 WL 246768, at *9 (quotation omitted).

Significantly and regrettably in this case, "a corporation has a life beyond that of mortals." *Taylor*, 166 F.R.D. at 361. A corporation "can [also] discharge its 'memory,' i.e., employees, and they can voluntarily separate themselves from the corporation." *Id.* "Consequently, it is not uncommon to have a situation . . . where a corporation indicates that it no longer employs individuals who have memory of a distant event or that such individuals are deceased." *Id.* "These problems *do not* relieve a corporation from preparing its Rule 30(b)(6) designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Id.* (emphasis added); *accord Great Am. Ins. Co.*, 251 F.R.D. at 539 ("The fact that an organization no longer has a person with knowledge on the designated topics does not relieve the organization of the duty to prepare a Rule 30(b)(6) designee.").

By requiring the responding party to produce a witness who is

30

> capable of testifying as to matters known or reasonably
> available to the organization, [Rule 30(b)(6)] makes plain its
> preference that a party not subvert the beneficial purposes of
> the Rule by simply incanting that no witness is available who
> personally has direct knowledge concerning all of the areas of
> inquiry.

*Prokosch*, 193 F.R.D. at 638 (quotation omitted).  When "no current employee has sufficient knowledge to provide the requested information, *the party is obligated to prepare one or more witnesses* so that they may give complete, knowledgeable and binding answers on behalf of the corporation." *CMI Roadbuilding, Inc., v. Ia. Parts, Inc.*, 322 F.R.D. 350, 360-61 (N.D. Ia. 2017) (quotation omitted) (emphasis added); *see also, e.g.*, *Kanaji v. Philadelphia Child Guidance Ctr. of Children's Hosp.*, No. CIV. A. 00-937, 2001 WL 708898, at *2 (E.D. Pa. June 20, 2001); *Prokosch*, 193 F.R.D. at 638-39; *Taylor*, 166 F.R.D. at 361-62.

Recognizing the circumstances of this case are likely a bit more uncommon than other situations in which corporate memory concerning the events at issue has been discharged, the Court inquired of the parties at the hearing whether they could direct the Court to legal authority regarding the taking of a 30(b)(6) deposition of a corporation whose sole owner/operator/existing employee was no longer available.  Unfortunately, they were not able to do so.  The Court has found the following caselaw instructive in reaching the conclusion that "[a] corporation that is in existence but no longer actively doing business can be compelled to produce a witness for a Rule 30(b)(6) deposition." *W.R. Grace & Co. v. N & M, Inc.*, No. 1:06mc602WJG, 2006 WL 3694595, at *2 (S. D. Miss. Dec. 13, 2006) (citing *Kanaji*, 2001 WL 708898, at *2-3).

31

In *W.R. Grace & Co.*, the defendant corporation was "a defunct business" with "no employees, officers, assets, or business records." *Id.* at *1. All of its documents had been delivered to counsel. *Id.* The defendant corporation argued "that because [it] is defunct there is no one it can designate to appear as a corporate representative for a deposition." *Id.* The defendant corporation also argued that one of its former owners, "the individual with the most knowledge," had already been deposed. *Id.* The plaintiff's motion to compel was granted and the defendant corporation ordered to produce a representative for the 30(b)(6) deposition. *Id.* at *2.

In another case, counsel for the defendant corporation had been unable to communicate with the corporation's president, learned that the president's home was vacant, and became aware that the corporation may no longer be conducting business. *McGrath v. Chesapeake Bay Diving, Inc.*, Civil Action No. 06-11413-CJB-SS, 2009 WL 1076735, at *1 (E.D. La. Apr. 20, 2009). The defendant corporation sought "a continuance of the corporate deposition to identify and educate a willing person to serve as [the] corporate representative." *Id.* at *3. "The parties agree[d] that [the defendant corporation wa]s unable to designate an officer, director, or managing agent." *Id.* The *McGrath* court granted the request for a continuance and, responding to an objection that defense counsel be the one to make the designation, noted that no authority had been cited "for the proposition that where a corporation is defunct and without an officer, director, or managing agent to testify, counsel employed by its insurer to defend the corporation's interests cannot designate a person who consents to offer testimony which shall be binding on the corporation." *Id.*

32

Perhaps the more common scenario are cases in which a corporation argues a legal unavailability of sorts based on the invocation of those with knowledge of their right against self-incrimination under the Fifth Amendment. *See, e.g.*, *Martinez v. Majestic Farms, Inc.*, No. 05-60833-CIV, 2008 WL 239164, at *2-3 (S.D. Fla. Jan. 28, 2008) (discussing *City of Chicago v. Wolf*, No. 91 C 8161, 1993 WL 177020 (N.D. Ill. May 21, 1993)); *see also In re: New England Compounding Pharm., Inc. Prods. Liab. Litig.*, MDL No. 13-2419-RWZ, 2015 WL 13715289, at *9 (D. Mass. July 31, 2015) [hereinafter *In re New England Compounding*]; *Convertino v. United States Dep't of Justice*, No. 07-13842, 2013 WL 153311, at *5 (E.D. Mich. Jan. 15, 2013); *cf. Sec. & Exch. Comm'n v. Leach*, 156 F. Supp. 2d 491, 495-98 (E.D. Penn. 2001) (answering a complaint). In such situations, courts have directed the corporation to "retain a person not previously associated with the corporation" and prepare that person so that he or she can answer questions absent very exceptional circumstances. *Martinez*, 2008 WL 239164, at *3; *compare Convertino*, 2013 WL 153311, at *5; *Martinez*, 2008 WL 239164, at *3, *with In re New England Compounding*, 2015 WL 13715289, at *9-10.

All of this is to say that it is well within this Court's discretion to direct Let It Ride to designate, prepare, and produce a Rule 30(b)(6) representative. *See also Lake City Assocs., LLC v. Windsor Arms, LLC*, No. 3:13-cv-782-J-39JBT, 2014 WL 12609863, at *2 (M.D. Fla. June 19, 2014) (ordering defendant entities to designate another corporate representative when designated representative was recovering from surgery as Rule 30(b)(6) "does not contemplate an indefinite delay in depos[ing] a corporate representative because of the physical incapacity of one person"). Such preparation may

indeed "be an onerous task." *Great Am. Ins. Co.*, 251 F.R.D. at 540; *accord Prokosch*, 193 F.R.D. at 639. Nevertheless, "[t]he view that the duty to educate a person with no prior knowledge is prejudicial to a corporation has not prevailed, and it appears now to be recognized that the Rule 30(b)(6) deponent must be woodshedded with information that was never known to the witness prior to deposition preparation." *Brunet v. Quizno's Franchise Co. LLC*, No. 07-cv-01717-PAB-KMT, 2008 WL 5378140, at *2 (D. Colo. Dec. 23, 2008) (quotation omitted). "Although adequately preparing a Rule 30(b)(6) deposition can be burdensome, 'this is merely the result of the concomitant obligation from the privilege of being able to use the corporate form in order to conduct business.'" *Great Am. Ins. Co.*, 251 F.R.D. at 540 (quoting *Taylor*, 166 F.R.D. at 362).

Therefore, the List Plaintiffs' motion to compel the 30(b)(6) motion of Let It Ride is granted, and Let It Ride shall prepare and produce a Rule 30(b)(6) representative to sit for its deposition. In light of the well-documented concerns regarding COVID-19 and the Court's prior ruling with respect to Let It Ride's discovery responses, such deposition shall occur remotely by February 15, 2021. Let It Ride should bear in mind that "[a] court may levy appropriate sanctions for a corporation's inadequate designation in response to a Rule 30(b)(6) notice." *CMI Roadbuilding, Inc.*, 322 F.R.D. at 361 (quotation omitted); *see* Fed. R. Civ. P. 30(d)(2), 37(d)(1)(A)(i); *see, e.g.*, *Cedar Hill Hardware & Constr. Supply, Inc. v. Ins. Corp. of Hannover*, 563 F.3d 329, 345 (8th Cir. 2009).

### B. Defendants' Motions to Compel

Defendants have also moved to compel the List Plaintiffs and Fiedler Intervenors

to supplement certain prior discovery responses.  Under the existing pretrial scheduling order, the deadline to file non-dispositive motions related to discovery was June 1, 2020. Fourth Am. Pretrial Sch. Order at 3.  The pretrial scheduling order further states that "[t]his schedule may be modified only upon a formal motion and a showing of good cause."  Fourth Am. Pretrial Sch. Order at 1.  Defendants' motions to compel were filed on June 17, 2020, two weeks after the June 1 deadline.

"District courts have broad discretion in establishing and enforcing deadlines and in maintaining compliance with discovery and pretrial orders."  *In re Baycol Prods. Litig.*, 596 F.3d 884, 888 (8th Cir. 2010) (citing *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758-59 (8th Cir. 2006)).  Rule 16 provides that "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4); *see, e.g.*, *Marmo*, 457 F.3d at 759.  "[T]he 'good-cause standard is not optional.'"  *Petrone v. Werner Enters., Inc.*, 940 F.3d 425, 434 (8th Cir. 2019) (quoting *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008)).  "Rule 16(b) assures that a magistrate judge's scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded without peril."  *Klein*, 2019 WL 246768, at *4 (quotation omitted).

"The primary measure of good cause is the movant's diligence in attempting to meet the scheduling order's requirements."  *Harris v. FedEx Nat'l LTL, Inc.*, 760 F.3d 780, 786 (8th Cir. 2014) (quotation omitted); *accord Sherman*, 532 F.3d at 716.  "The 'good cause' standard is an exacting one, for it demands a demonstration that the existing schedule "cannot reasonably be met despite the diligence of the party seeking the extension."  *Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minn.*, 187 F.R.D.

578, 581-82 (D. Minn. 1999) (quotation omitted); *see, e.g.*, *Klein*, 2019 WL 246768, at

\*4; *Khoday v. Symantec Corp.*, No. 11-cv-180 (JRT/TNL), 2013 WL 12141434, at \*2 (D.

Minn. May 15, 2013).

Defendants do not adequately address the pretrial scheduling order's June 1

deadline.  Perhaps Defendants assumed that their motion to amend the scheduling order,

addressed in the next section, would excuse the untimely filing of these motions to

compel.   But, Defendants have not made that argument.   Moreover, nothing in

Defendants' three motions—the two motions to compel and the motion to amend the

scheduling order—explains why Defendants were able to meet the June 1 deadline with

respect to their motion to amend the scheduling order but not the two motions to compel.

Collectively, the discovery at issue in these two motions to compel was served by

Defendants no later than September 5, 2019, and, in the case of the List Plaintiffs, almost

two months before that.   Again collectively, Defendants received responses to their

discovery requests no later than mid-November.  Yet, the record before the Court shows

that Defendants elected not to follow up on any purported deficiencies until mid-April

2020 when approximately one month of fact discovery remained.   Defendants' five-

month delay in raising their dissatisfaction with the List Plaintiffs and Fielder

Intervenors' discovery responses can hardly be said to show that these issues were

diligently pursued.  *See, e.g.*, *Stai v. Deshane*, No. 14-cv-4152 (RHK/LIB), 2016 WL

11031224, at \*4-5 (D. Minn. Jan. 22, 2016); *Bredemus v. Int'l Paper Co.*, 252 F.R.D.

529, 534 (D. Minn. 2008); *see also* Fed. R. Civ. P. 26(b)(2)(C)(ii).

The Court recognizes that a series of unfortunate events have impacted this

litigation.  As discussed above, however, it appears from the information before the Court that Defendants' approach following Chetcuti's passing has been more passive than diligent in the legal sense, and little was done to determine the status of Let It Ride after his death.  This stagnation is all the more troubling considering evidence before the Court early on in this litigation suggesting that Let It Ride was attempting to evade service.  *See* ECF No. 27 at 3, 5, 9.  In any event, Defendants were well aware of these events in March 2020, when the parties stipulated to the June 1 deadline.  *See generally* ECF No. 84.

The Court also recognizes that the unprecedented COVID-19 pandemic and its social-distancing measures have brought new challenges to people's daily lives and the practice of law.  Although the recent pandemic may be unparalleled, it does not account for Defendants' failure to engage fully in the discovery process in the months prior.  And, again, Defendants have not specifically articulated why they could not have brought their motions to compel by the June 1 deadline.

In sum, Defendants have not been diligent in attempting to meet the deadlines in the Fourth Amended Pretrial Scheduling Order.  Defendants have not shown good cause to excuse the untimely filing of their motions to compel, and therefore the motions are denied.  *See Petrone*, 940 F.3d at 434-36 (error to permit modification of deadline in scheduling order where good cause had not been shown).

### C. Amendment of the Pretrial Scheduling Order

While Defendants and the Fielder Intervenors have each formally moved to amend Fourth Amended Pretrial Scheduling Order, the parties all agree that some adjustments to

the schedule need to be made. *See, e.g.*, Defs.' Mem. in Supp. of Mot. to Am. at 1-2, ECF No. 102; Intrvnrs.' Mem. in Supp. of Mot. to Compel at 18-19; Pls.' Mem. in Opp'n to Mot. to Am. at 2, ECF No. 118; *see also* Intrvnrs.' Mem. in Opp'n to Mot. to Am. at 1, ECF No. 129.   The parties do not agree, however, on the length of the extension necessary.

As stated above, whether to the modify the deadlines set forth in a pretrial scheduling order requires the Court to consider a party's diligence (or lack thereof) in attempting to meet those deadlines.  *See, e.g.*, *Harris*, 760 F.3d at 786; *Sherman*, 532 F.3d at 716.  Local Rule 16.3 assists the Court's consideration of diligence by requiring the party seeking to modify the discovery deadlines in a pretrial schedule order to: "(1) describe what discovery remains to be completed; (2) describe the discovery that has been completed; (3) explain why not all discovery has been completed; and (4) state how long it will take to complete discovery."  D. Minn. LR 16.3(c).

Defendants seek a five-month extension of fact discovery "to allow the parties to finish engaging in written discovery and take depositions of the parties in this case," Defs.' Mem. in Supp. of Mot. to Am. at 1, citing the major medical events experienced by Carwell and Chetcuti, Chetcuti's tragic passing, and COVID-19.  Defendants reiterate that, after Chetcuti's death, "it has been impossible to conduct discovery on behalf of Let It Ride, or locate a 30(b)(6) representative for a deposition."  Defs.' Mem. in Supp. of Mot. to Am. at 6.

The List Plaintiffs and Fielder Intervenors seek a two-month extension of fact discovery to "conduct the necessary depositions and provide the requested written

discovery."  Intrvnrs.' Mem. in Opp'n to Mot. to Am. at 1; *see* Pls.' Mem. in Opp'n to Mot. to Am. at 2 ("This limited extension would allow the Defendants to produce long overdue discovery and schedule the remote depositions of . . . [Carwell and Let It Ride].");  *see also* Intrvnrs.' Mem. in Supp. of Mot. to Compel at 19.

The Court finds good cause for some modification of the existing pretrial schedule to allow the discovery ordered herein and party depositions to take place, but the record does not support a blanket, unqualified extension of fact discovery.  The parties have had more than one year to conduct discovery in this case.  It is not particularly clear what additional written discovery Defendants seek from the List Plaintiffs and Fielder Intervenors and why it was not pursued sooner.  Nor is the Court persuaded by Defendants' contention that "it has been impossible for the parties to conduct discovery on [Let It Ride]."  Defs.' Mem. in Supp. of Mot. to Am. at 2.

As for the List Plaintiffs and Fiedler Intervenors, the Court has ordered Carwell and Let It Ride to address discovery requests served prior to May 1, i.e., discovery that had been commenced in a time to be completed by the June 1 deadline.  Beyond responses to this written discovery and party depositions, the List Plaintiffs and Fielder Intervenors have not identified what, if any, additional written discovery they seek from Defendants.  While the Court's ruling should not be interpreted to prohibit or preclude reasonable requests for clarification of a response ordered herein, whether any such follow-up request exceeds the bounds of clarification will be a context-specific inquiry.

Taking into account the time (a) allotted for Carwell's supplementation; (b) needed to ship the boxes of documents from Canada, review them, and respond to

discovery served on Let It Ride; and (c) required to schedule and orchestrate the remote depositions of Carwell and Let It Ride as well as complete any remaining party depositions, the Court will grant an extension of the fact discovery until February 15, 2021, to complete this pending discovery according to the timeline set forth herein. The Court will then adjust other deadlines, including but not limited to expert discovery, dispositive motions, and the trial-ready date to account for the extension of fact discovery. The Court will also reset the settlement conference. A Fifth Amended Pretrial Scheduling Order shall issue shortly.

In closing, the Court does not make these modifications lightly. This case was filed in 2018. It took nearly six months to effect service on Let It Ride, including a motion for alternative service, where evidence before the Court suggested Let It Ride was attempting to evade service in this matter. *See* ECF No. 27 at 3, 5, 9. The completion of fact discovery has been complicated by unforeseeable major medical events, a death, and a global pandemic altering the ways people interact with one another and affecting international travel. The parties must use their best efforts to persevere and press on through these challenges. The parties are cautioned that the Court will not look favorably on any future extension requests.

### D.  Fees & Costs

Lastly, each party has requested their attorney fees and costs associated with briefing and responding to the motions to compel. Rule 37 provides for expenses in connection with a motion to compel under certain circumstances. *See generally* Fed. R. Civ. P. 37(a)(5). The List Plaintiffs and Fiedler Intervenors' motions were granted in part

and denied in part. *See* Fed. R. Civ. P. 37(a)(5)(C) (permitting expenses when a motion is granted in part and denied in part.). Defendants' motions were both denied. *See* Fed. R. Civ. P. 37(a)(5)(B) (requiring expenses when a motion is denied unless "the motion was substantially justified or other circumstances make an award of expenses unjust"). It is this Court's view that any award of attorney fees and costs would have little if any positive effect, and would serve only to embolden further the recipient party, entrench the parties in their respective positions, and increase the costs of this litigation, making an award of fees unjust under the circumstances. Accordingly, each party shall bear its own costs and attorney fees.

## III. ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The List Plaintiffs' Motion to Compel Production of Discovery, ECF No. 92, is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

2. The Fiedler Intervenors' Motion to Compel Discovery, for Leave to Conduct Defendants' Depositions Remotely, for an Amendment of the Scheduling Order, & for Sanctions, ECF No. 108, is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

3. Defendants' Motion to Amend the Scheduling Order, ECF No. 101, is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

4. Defendants' Motion to Compel the List Plaintiffs' Discovery Responses, ECF No. 132, is **DENIED**.

5. Defendants' Motion to Compel the Fiedler Intervenors' Discovery Responses, ECF No. 137, is **DENIED**.

6. To the extent the parties have not yet executed the stipulation regarding the effect of Carwell's verification, such stipulation shall be executed by **November 15, 2020**.

7. To the extent the authorizations for Carwell's criminal history, cell phone records, and medical records have not yet been completed, Carwell shall complete them by **November 1, 2020**.  Consistent with the spirit of the parties' agreement, Carwell shall fully cooperate with any reasonable request for further information in connection with these authorizations so that the documents sought by the authorizations can be obtained.

8. To the extent he has not already done so, Carwell shall supplement his response to Interrogatory 7 by **November 15, 2020**.

9. To the extent Carwell has not supplemented his response to Request for Production 21, he shall do so by **November 15, 2020**.

10. Carwell shall sit for a deposition by video conference **no sooner than December 1 but no later than December 15, 2020**.

11. **By November 15, 2020**, the parties shall arrange to have the boxes of documents with Hiscutt shipped from Canada to Defendants' counsel.

12. **By January 15, 2021**, Defendants shall respond, without objection, to (a) the List Plaintiffs' Interrogatories and Requests for Production of Documents to Defendant 0820527 B C LTD d/b/a Let It Ride Carriers (First Set), dated May 8, 2019; (b) the Fielder Intervenors' Request for Production of Documents to Defendant 0820527 B C LTD d/b/a Let It Ride Carriers, dated November 5, 2019; and (c) Interrogatories 1, 20, 27, 28, 31, 35, 37, 39, 41, and 47 of the Fielder Intervenors' Interrogatories to Defendant Let It Ride Carriers, dated November 5, 2019.

13. Let It Ride shall prepare and produce a Rule 30(b)(6) representative to sit for a deposition by video conference, such deposition to occur by **February 15, 2021**.

14. A Fifth Amended Pretrial Scheduling Order shall issue.

15. Each party shall be responsible for its own costs and attorney fees.

16. All prior consistent orders remain in full force and effect.

17. Failure to comply with any provision of this Order or any other prior consistent Order shall subject the non-complying party, non-complying counsel and/or the party such counsel represents to any and all appropriate remedies, sanctions and the like, including without limitation: assessment of costs, fines and attorneys' fees and disbursements; waiver of rights to object; exclusion or limitation of witnesses, testimony, exhibits and other evidence; striking of pleadings; complete or partial dismissal with prejudice; entry of whole or partial default judgment; and/or any other relief that this Court may from time to time deem appropriate.

Dated: October  8  , 2020

_____*s/ Tony N. Leung*_____
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*List et al. v. Carwell et al.*
Case No. 18-cv-2253 (DSD/TNL)